UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 05-CV-223 (JFB) (LB)

———————————

Darrell Ramos,

Plaintiff,

versus

New York City Department of Correction,

Defendant.

———————————

MEMORANDUM AND ORDER
April 26, 2006

———————————

Joseph F. Bianco, District Judge:

*Pro se* plaintiff Darrell Ramos is an employee of defendant New York City Department of Correction ("DOC"). In this case, Ramos contends that DOC violated his rights under Title VII by discriminating against him because of his race by (1) firing him, (2) refusing to give him back-pay after he was reinstated, and (3) refusing to permit him to be firearm qualified. Ramos also contends DOC violated 42 U.S.C. § 1983 by refusing to permit him to be firearm qualified.

DOC moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim upon which relief may be granted. By Order dated March 7, 2006, notice was given to both parties that the Court was converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 56. For the reasons that follow, defendant's motion is granted and the complaint is dismissed. Plaintiff is given leave to amend as to one claim of discrimination.

I. Background

A. The Facts[1]

On May 31, 2002, Ramos was fired from his position as a correction officer at Rikers

---

[1] The facts are drawn primarily from plaintiff's complaint and supporting materials. They are construed in a light most favorable to plaintiff, the non-moving party. As plaintiff is proceeding *pro se*, the Court will "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)).

Island because his employer learned that he had two prior arrests. (Compl. p. 1, ¶ 5.) Ramos's first arrest was on August 19, 2001, based on a complaint by a woman alleging Ramos had assaulted another man. (*Id.* ¶ 3.) Ramos contends that he never met the man he was accused of assaulting, and indeed, the charges in that case were dropped the following day. (*Id.*) The second arrest, on March 24, 2002, was based on an assault complaint by the woman who had filed the complaint against him in his prior arrest. (*Id.* ¶ 4.) That case was also dismissed. (*Id.*)

Plaintiff successfully grieved his dismissal from DOC to his union, and was reinstated by DOC on September 3, 2002. (*Id.* ¶ 6.) After his reinstatement, he repeatedly asked for back pay and requested that his firearm qualification be restored, but he never received back pay, and his firearm qualification was never restored. (*Id.*) On December 1, 2003, plaintiff wrote a memorandum to DOC indicating that on November 25, 2003, he was told that he was categorized under "No Firearm." (Dec. 1, 2003, Mem. to Valerie Oliver, attached to Pl.'s Opp.) As a final effort, Ramos spoke to his union vice president, but was rebuffed and told "be grateful you have a job." (Compl. ¶ 7.) After realizing that his union was not going to support him, he contacted his commanding officer at Rikers Island and was informed that his authorization to be firearm qualified had to be submitted to the firearm review board. (*Id.*)

According to the record, plaintiff was informed by the Assistant Commissioner of Personnel in a letter dated August 23, 2004, that the period he had been out of work was a leave of absence without pay. (Aug. 23, 2004, DOC Mem., attached to Pl.'s Opp.)

On or about November 12, 2004,[2] Ramos filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), charging DOC with discrimination based on the events alleged in this complaint and described above. (*See* Bardavid Decl. Ex. A.) On December 16, 2004, the EEOC dismissed Ramos's complaint because it was not timely filed. (*See* Dismissal and Notice of Rights, attached to Compl.)

B. The Instant Action

Plaintiff filed the complaint in this case on January 14, 2005, alleging DOC violated his rights and discriminated against him in violation of Title VII and 42 U.S.C. § 1983. Plaintiff's complaint alleges three separate acts of racial discrimination in violation of Title VII: (1) that DOC discriminated against him by not permitting him to be firearm qualified; (2) that DOC discriminated against him by firing him; and (3) that DOC discriminated against him by not giving him back-pay after they reinstated him. Plaintiff also alleges that DOC violated § 1983 by violating their own general orders and refusing to permit him to be firearm qualified. (*See* Compl. ¶ 2.)

The case was assigned to the Honorable Carol B. Amon. On June 29, 2005, defendant moved to dismiss the complaint. Judge Amon referred the motion to Magistrate Judge Lois Bloom for a report and recommendation. On February 10, 2006, this case was reassigned to this Court and, on February 23, 2006, the referral to Judge Bloom was vacated and the motion is now before this Court. Thereafter,

---

[2] According to the EEOC complaint, Ramos signed the complaint on November 12, 2004, and the EEOC received the complaint on November 18, 2004. (*See* Bardavid Decl. Ex. A.)

2

on March 7, 2006, this Court issued an Order giving notice that it was converting defendant's motion to one for summary judgment on the issue of whether the claims are time-barred. In that Order, the Court gave both sides the opportunity to submit additional evidence. Plaintiff filed an "Amended Opposition" attaching several documents. All of plaintiff's submissions have been considered by the Court. Oral argument was held on April 20, 2006.

## II. DISCUSSION

As a threshold matter, the Court addresses its decision to convert defendant's motion to dismiss certain claims as time-barred into one for summary judgment. A district court may convert a motion to dismiss into one for summary judgment provided that the court gives "sufficient notice to an opposing party and an opportunity for that party to respond." *Gordon v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995); *see also Beacon Enterprises Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir. 1983) ("[N]otice is particularly important when a party is proceeding *pro se* and may be unaware of the consequences of his failure to offer evidence bearing on triable issues.").

Plaintiff's submissions include an affidavit and several documents alleging facts that are not in the complaint, including various memoranda and correspondence with DOC dated long after the complaint in this case was filed. In an abundance of caution, the Court converted the motion and considers these submissions, and gave plaintiff an opportunity to supplement his various opposition papers with any additional evidence in support of his position that his discrimination claims are timely. *In re G. & A. Books, Inc.*, 770 F.3d 288, 294-95 (2d Cir. 1985).

The Court notes that the materials relied upon by the defendant, namely the EEOC complaint filed by plaintiff, could have been properly considered on a motion to dismiss without converting it to one for summary judgment.[3] Nevertheless, because *pro se* plaintiff relies on various materials outside the complaint, the Court converts defendant's motion to dismiss based on timeliness into one for summary judgment. *See* Fed. R. Civ. P. 56. Both parties had notice of this, and defendant properly noticed *pro se* plaintiff under Local Rule 56.2 for how to oppose a motion for summary judgment.

### A. SUMMARY JUDGMENT STANDARD

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a

---

[3] *See, e.g., Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)); *Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 177-78 (E.D.N.Y. 2006); *Mangiafico v. Blumenthal*, 358 F. Supp. 2d 6, 9 (D. Conn. 2005); *Dollinger v. State Ins. Fund*, 44 F. Supp. 2d 467, 472 (N.D.N.Y. 1999); *McNight v. Dormitory Auth. of the State of New York*, 995 F. Supp. 70, 74-75 (N.D.N.Y. 1998); *Moll v. Telesector Resources Group, Inc.*, No. 04-CV-0805S, 2005 WL 2405999, at *3-4 (W.D.N.Y. Sept. 29, 2005); *Dutton v. Swissport USA, Inc.*, No. 04 CV 3417 (RJD), 2005 WL 1593969, at *1 (E.D.N.Y. July 1, 2005); *Evans v. The New York Botanical Garden*, No. 02 Civ. 3591 (RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2004); *Crespo v. New York City Transit Auth.*, No. 01-CV-0671 (ILG), 2002 WL 398805, at *5-6 (S.D.N.Y. Jan. 7, 2002); *Okoampa-Ahoofe v. Johnson & Higgins*, No. 99 Civ. 5820 (AGS), 2000 WL 1471552, at *1 (S.D.N.Y. Sept. 29, 2000).

3

motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

1. Application

Title VII provides that a discrimination claim is time-barred if an administrative complaint is not filed within the prescribed time period. *See* 42 U.S.C. § 2000e-5(e)(1); *Forsyth v. Fed'n Employment and Guidance Serv.*, 409 F.3d 565, 572 (2d Cir. 2005); *Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130, 133 (2d Cir. 2003). Because New York has its own division of human rights, it is a so-called deferral state for purposes of Title VII. *Mohasco Corp. v. Silver*, 447 U.S. 807, 813-14 (1980); *Harris v. City of New York*, 186 F.3d 243, 247 n.2 (2d Cir. 1999). Hence, in New York, a plaintiff must file an administrative charge within 300 days of knowing or having reason to know of the alleged discriminatory act. *Harris*, 186 F.3d at 247 (holding that the statute of limitations runs "when [plaintiff] knew or had reason to know of the injury serving as the basis for his claim") (collecting cases). The charge may be filed with either the EEOC or the New York Division of Human Rights. *See Butts v. The City of New York Dep't of Housing Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)*, superceded by statute on other grounds as stated in Hawkins v. 1115 Legal Services Care*, 163 F.3d 684, 693 (2d Cir. 1998). "This requirement functions as a statute of limitations . . . in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998) (internal citations omitted).

a. Ramos's Termination and Right to be Firearm Qualified

Plaintiff alleges that he was fired on May 31, 2002, and was denied the right to be firearm qualified upon his return to work on September 3, 2002. (Compl. ¶¶ 5, 6). As to plaintiff's discrimination claim based on his May 31, 2002 termination, that claim is dismissed. Plaintiff filed a complaint with the EEOC on November 12, 2004, nearly two and a half years after he was dismissed by DOC. Therefore, plaintiff's discrimination claim based on his firing is time-barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination . . . . constitute[] a separate actionable 'unlawful employment practice' [and plaintiff] can only file a charge to cover discrete acts that 'occurred' within the appropriate time period."); *Quinn*, 159 F.3d at 765; *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997); *Butts*, 990 F.3d at 1401.

4

As to plaintiff's discrimination claim based on DOC not permitting him to be firearm qualified, that claim is also dismissed as time-barred. According to the record, plaintiff wrote a memorandum on December 1, 2003, indicating that on November 25, 2003, he was told that he was categorized under "No Firearm." (Dec. 1, 2003, Mem. to Valerie Oliver, attached to Pl.'s Opp.) Therefore, there is no question that plaintiff was on notice that DOC had denied him the right to be firearm qualified at the very latest on November 25, 2003. Plaintiff did not file an EEOC complaint until November 12, 2004, over three hundred days after he learned of this alleged adverse employment action. *See Morgan*, 536 U.S. at 114; *Quinn*, 159 F.3d at 765.

Plaintiff does not contest that he filed his EEOC complaint long after he was fired and later unsuccessfully sought his firearm qualification. Instead, he appears to argue a "continuing violation" by DOC because (1) he has recently asked to have his firearm restored to him; (2) he still receives "on-going acts of harmful administrative attacks from his superiors"; and (3) he was "deceptively under the perception that his union was administratively resolving matters . . . [and] assumed there would be no need to file any [EEOC] complaint as long as the wheels of administrative progress were in motion." (Pl.'s Opp. at 2).

"[A] continuing violation may be found 'where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Quinn*, 159 F.3d at 766 (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994); *see also Annis v. County of Westchester*, 136 F.3d 239, 245-46 (2d Cir. 1998).

Plaintiff's "continuing violation" theory necessarily fails as to plaintiff's firing and DOC not permitting him to be firearm qualified. As to plaintiff's firing, this is a discrete act, not "on-going." *Morgan*, 536 U.S. at 114 ("Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the . . . 300-day time period after the discrete discriminatory act occurred."); *Lightfoot*, 110 F.3d at 907-08 ("A continuing violation is not established merely because an employee continues to feel the effects of a discriminatory act [such as lower wages] on the part of the employer. To hold otherwise would render meaningless the time limitations imposed on discrimination actions."). Further, plaintiff has put forth no evidence to support a claim that DOC engaged in "discriminatory policies or practices," and none can be inferred from plaintiff's submissions. *See Falinski v. Kuntz*, 38 F. Supp. 2d 250, 257 (S.D.N.Y. 1999) ("The courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of compelling circumstances.") (quotation marks omitted). As described earlier, the date plaintiff was fired, May 31, 2002, started the clock as to his claim of unlawful termination. Plaintiff waited nearly two and a half years to file a claim with the EEOC. Where, as here, "there is a 'reasonably ascertainable date on which the act occurred, that is the day on which the statute began to run,' notwithstanding that plaintiff may still feel some effects as a result of the prior discriminatory act." *Malarkey v. Texaco, Inc.*, 559 F. Supp. 117, 121 (S.D.N.Y. 1982), *aff'd,* 704 F.2d 674 (2d Cir. 1983) (quoting

5

*Marshall v. American Motors Corp.*, 475 F. Supp. 875, 884 (E.D. Mich. 1979) (cited with approval in *Lightfoot*, 110 F.3d at 907)).

As to plaintiff's discrimination claim based on DOC not permitting plaintiff to be firearm qualified, the record does not support a continuing violation claim. Although the record shows numerous letters and memoranda between plaintiff and DOC concerning this, it is clear that plaintiff was informed no later than November 25, 2003 that he was categorized as "No Firearm." It does not matter, for purposes of the statute of limitations, that DOC repeatedly refused, even recently, to allow plaintiff to be firearm qualified. *See Lightfoot*, 110 F.3d at 907 (repeated denials of promotion and pay increases does not constitute a continuing violation); *Aggarwal v. New York City Health & Hosp. Corp.*, No. 98 Civ. 5063, 2000 WL 172787, at *4 (S.D.N.Y. Feb. 10, 2000) (holding that repeated acts of discrimination do not constitute a continuing violation). Similarly, plaintiff's assertion that his claims are not time-barred because he "continu[es] to (and still does) receive ongoing acts of harmful administrative attacks from his superiors" is unpersuasive. (Pl.'s Am. Opp. ¶ 6.) Plaintiff's termination and DOC's failure to permit plaintiff to be firearm qualified are discrete acts. *See Morgan*, 536 U.S. at 114; *Lightfoot*, 110 F.3d at 907. Therefore, plaintiff's time to file began to run on the day he received notice of the alleged unlawful employment action. *Harris*, 186 F.3d at 247.

In sum, by waiting more than 300 days to file an EEOC complaint based on his termination and his right to be firearm qualified, plaintiff has forfeited his right to bring suit under Title VII.[4] Hence, the Court concludes that plaintiff's claims alleging discrimination based on his dismissal and DOC not permitting him to be firearm qualified are time-barred and, therefore, dismissed.

b. Ramos's Failure to Receive Back-Pay

Ramos alleges, and the record supports, that he did not learn that DOC was denying him back-pay until August 23, 2004. On that date, he received a memorandum informing

---

[4] To the extent plaintiff argues that the 300-day deadline should be tolled because he was "deceptively under the perception that his union was administratively resolving matters," his claim fails. "[E]quitable tolling is only appropriate in rare and exceptional circumstances . . . [such as] misleading conduct [by] the defendant." *Zerilli-Edelglass v. New York City Transit Authority*, 333 F.3d 74, 80 (2d Cir. 2003) (internal citations and quotations omitted). Plaintiff has not put forth any evidence that DOC or his union actively misled him about applicable EEOC filing deadlines. *See Francis v. Blaikie Group*, 372 F. Supp. 2d 741, 748 (S.D.N.Y. 2002) (tolling only appropriate if the employer actively misled into thinking that there was no 300-day deadline in which to file his claim with the EEOC) (quoting *Miller v. Int'l Tel. & Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)); *Taylor v. Ohio Dep't of Rehab. and Correction, Trumbull County*, No. 401CV1620, 2001 WL 1915015, at *2 (N.D. Ohio 2001) (holding that actively pursuing a grievance under a collective bargaining agreement does not toll Title VII statute of limitations). In addition, plaintiff has failed to demonstrate that he "acted with reasonable diligence during the time period [he] seeks to have tolled," or "proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass*, 333 F.3d at 80-81 (internal quotation omitted). Therefore, this Court declines to equitably toll the statute of limitations.

him that the period he was out of work was leave without pay. At oral argument, counsel for DOC conceded that he was unaware of any earlier notice given to Ramos denying him back-pay, although he urged the Court to infer notice from the fact that Ramos received no back-pay check upon returning to work.[5] According to plaintiff, when he was reinstated, his union "consistently assured me that they were diligently working towards having my employers' award me straight back pay." (Pl.'s Reply ¶ 1.)

The time for plaintiff to file a complaint does not begin to run until he learned or had reason to learn that he was not going to receive back-pay. *See Harris*, 186 F.3d at 247. DOC argues that, at least by the time plaintiff received one or two paychecks, he was on notice that he was not going to receive back-pay and the clock begins to run. (Reply Mem. at 4.) At oral argument, however, counsel for DOC conceded that being awarded back-pay, as opposed to receiving a raise, would normally come as a separate paycheck. Thus, the limitations period does not begin to run until plaintiff has notice of the alleged discriminatory act. *See Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980); *Harris*, 186 F.3d at 247. The facts as alleged here are also different from those cases where the limitations period is tolled while an employer's union grieves an alleged unlawful employment act. *See, e.g., Taylor*, 2001 WL 1915015, at *2. Under this reasoning, an employee is on notice of an alleged unlawful employment act and, thus, the statute of limitations is not tolled, notwithstanding an attempt by the plaintiff's union to grieve the action. Here, there is no record that DOC ever told plaintiff he was not going to receive back-pay until August 23, 2004. Until that time, according to plaintiff, his union and DOC were "diligently working" towards awarding him back pay. DOC does not submit any evidence to the contrary.[6]

Therefore, based on the record, plaintiff was put on notice that he was not going to be awarded back pay on August 23, 2004. Thus, his EEOC complaint based on this claim is timely.

B. MOTION TO DISMISS STANDARD[7]

In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Weixel*, 287 F.3d at 145 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

---

[5] As noted earlier, this Court converted the motion to dismiss to one for summary judgment and invited both parties to submit additional evidence as to the timeliness of plaintiff's discrimination claims. DOC did not submit any additional evidence.

[6] At oral argument, counsel for DOC argued that plaintiff's termination and denial of back-pay are part of the same transaction. This argument is not persuasive. Plaintiff's complaint alleges separate acts of discrimination. He alleges he was unlawfully terminated, and then unlawfully denied back pay after DOC realized he should not have been fired. (*See* Compl. ¶ 2.b.) These are certainly two separate acts by DOC.

[7] The remaining arguments by defendant are considered using the standards and analysis for a motion to dismiss.

The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Twombly v. Bell Atlantic Corp.,* 425 F.3d 99, 106 (2d Cir. 2005).

1. Sufficiency of Ramos's Title VII Claim

a. The Complaint Fails to Allege a Claim Upon Which Relief May be Granted

Notwithstanding the timeliness of plaintiff's alleged discrimination claim based on DOC's failure to provide him back-pay, plaintiff still fails to state a claim upon which relief may be granted.

A plaintiff in an employment discrimination case need only provide a "'short and plain statement'" that "'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Baldwin v. LIJ North Shore Health System*, 392 F. Supp. 2d 479, 482-83 (E.D.N.Y. 2005).

To establish a *prima facie* case of racial discrimination under Title VII, a plaintiff must show (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz*, 202 F.3d at 567. Although an employment discrimination complaint need not contain specific facts establishing a *prima facie* case under *McDonnell Douglas*, the complaint must allege facts that give fair notice of his claim and the grounds upon which it rests. *See Swierkiewicz*, 534 U.S. at 512; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Ramos's complaint in this case alleges DOC discriminated against him by not allowing him to be firearm qualified by alleging the following: "[b]ecause . . . plaintiff's ethnic background is African-American, the plaintiff reasonably believes that he is being discriminatorily disregarded by the defendants." (Compl. ¶ 2.b.) Plaintiff further alleges that "defendants violated [Title VII] when they . . . reinstated him back to full duty denying him all back wages by arbitrarily regarding the plaintiff's time out as a *leave of absents* [sic]." (*Id.* ¶ 2.c.) The complaint goes on to describe facts that, if anything, show a non-discriminatory reason for DOC's actions – namely, that plaintiff was arrested twice and fired as a result of DOC learning of these arrests, and later reinstated without back-pay after his union grieved his dismissal. (*Id.* ¶¶ 3-5.) Plaintiff also submitted several pleadings and affidavits, and numerous documents in opposition to defendant's motion. None of these submissions include any factual allegation in support of a claim of racial discrimination.

Notwithstanding the liberal pleading standard in Title VII cases (especially for *pro se* litigants), the complaint as written does not describe any factual allegations to support the vague and conclusory assertion that the treatment he received by DOC was a result of his race. The complete absence of *any* such facts supporting Ramos's discrimination claim fails to satisfy even this most liberal standard. *See, e.g., Yusuf v. Vassar College*, 35 F.3d 709, 713-14 (2d Cir. 1994) (dismissing claims based on plaintiff's conclusory assertions of racial and gender discrimination against a university); *Timmons v. City of Hartford*, 283 F. Supp. 2d 712, 717-18 (D. Conn. 2003)

(dismissing complaint based in part on the fact that no factual allegations were provided in support of discrimination claim); *Richards v. Frank*, No. CV-89-3087, 1991 WL 35502, at *1-2 (E.D.N.Y. March 6, 1991) (holding it appropriate to grant a motion to dismiss a discrimination claim where claim is not supported by factual allegations).

In addition, the only remaining claim is Ramos's claim arising out of DOC's failure to provide back-pay to him after he was reinstated on September 3, 2002. The conclusory claims of discrimination primarily address DOC not permitting plaintiff to be firearm qualified. (*See* Compl. ¶ 2.b.) The complaint fails to give DOC fair notice of the factual allegations by plaintiff of DOC's alleged discriminatory actions in denying him back-pay. *See Swierkiewicz*, 534 U.S. at 512. Therefore, the claim is dismissed as failing to state a claim upon which relief may be granted.

### b. Ramos is Granted Leave to Amend His Complaint

A court must make reasonable allowances to make sure a *pro se* plaintiff does not forfeit rights due to his lack of legal training. *See Weixel*, 287 F.3d at 145-46; *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Hence, Ramos is granted leave to amend his complaint to allege facts that give fair notice to DOC of his claim of racial discrimination arising out of his denial of back-pay. *See Swierkiewicz*, 534 U.S. at 512. The amended complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2); *id*.

### 2. Ramos's Section 1983 Claims

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) defendant acted under color of state law, and (2) defendant's actions deprived plaintiff of his constitutional rights or privileges. *Knight v. City of N.Y.*, 303 F. Supp. 2d 485, 501 (S.D.N.Y. 2000) (citing *Eagleston v. Guido*, 41 F.3d 865, 872 (2d Cir.1994)). The Court "will dismiss a complaint that 'consist[s] of nothing more than naked assertions, and set[s] forth no facts upon which a court could find a [constitutional] violation.'" *Mitchell v. Keane*, 974 F. Supp. 332, 338 (S.D.N.Y. 1997) (quoting *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978)); *see also Alfaro Motors, Inc v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) ("[A] complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; . . . broad, simple, and conclusory statements are insufficient to state a claim under § 1983.").

Plaintiff's § 1983 claim is dismissed, for plaintiff fails to allege any substantive constitutional violation. He merely states that DOC violated § 1983 "by disregarding their own general order . . . once it was determined by the court that I . . . was not guilty of any crime . . ., my command still refused to permit me to be firearm qualified as they are mandated to do . . . ." (Compl. ¶ 2(a)). As § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred,'" plaintiff's claim alleging § 1983 violations without alleging any substantive constitutional violations against DOC is dismissed. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995)

("A common law tort does not give rise to a § 1983 action unless the commission of the tort also violates a right guaranteed plaintiff under the Constitution or federal statute.").

Moreover, even if this Court construed plaintiff's § 1983 claim to allege a due process violation, it still fails. To sustain such a claim, a plaintiff must show that (1) he possesses a liberty or property interest protected by the Constitution or federal statutes, and (2) he was deprived of that liberty or property interest without due process. *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (citing *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995)). Here, no liberty interest is at stake, and, thus, the threshold issue is whether plaintiff possessed a property interest.

Property interests are not created by the Constitution, but "'stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Ciambriello* 292 F.3d at 313 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). To state a claim under § 1983, "plaintiff must have a property interest in a benefit that is 'more than an abstract need or desire for it. [He] must instead have a legitimate claim of entitlement to it' under state or federal law." *Finley v. Giacobbe*, 79 F.3d 1286, 1296 (2d Cir. 1996) (quoting *Roth*, 408 U.S. at 577)). For example, a property interest exists in a government job where one has a reasonable expectation of continued employment. *See Roth*, 408 U.S. at 576-78.

Under New York law, plaintiff does not have a "legitimate claim of entitlement" to possessing the DOC permit to be firearm qualified. *Finley*, 79 F.3d at 1296. This is because in New York, "[t]he possession of a handgun license is a privilege rather than a right." *Shapiro v. New York City Police Dep't*, 595 N.Y.S.2d 864, 868 (N.Y. Sup. Ct. 1993) (quoting *Sewell v. City of New York*, 583 N.Y.S.2d 255 (1st Dep't 1992) (citing *Matter of Caruso v. Ward*, 554 N.Y.S.2d 190 (1st Dep't 1990))). Thus, plaintiff does not have a constitutionally protected property interest in a permit to be firearm qualified.[8]

Further, even if this Court were to conclude that plaintiff has a constitutionally protected property interest in a firearm qualification permit, his claim still fails because he fails to allege how such a violation occurred without due process. *See Narumanchi v. Board of Trustees*, 850 F.2d 70, 72 (2d Cir. 1988). Where an alleged due process violation occurred based on the unauthorized actions of a State employee, there is no constitutional violation so long as the State provides a post-deprivation remedy. *See Hellinic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). Here, plaintiff accuses his "command" of refusing to permit him to be firearm qualified "as they are mandated to do" under a DOC order. (*See* Compl. ¶ 2(a)). In New York, city employees have a post-deprivation remedy in the form of an Article 78 proceeding. *See Witherspoon v. Horn*, 19 A.D.3d 250, 251 (1st Dep't 2005) (employee challenging dismissal from DOC through

---

[8] Plaintiff argues in his opposition submissions that DOC's denial of a firearm qualification permit also violates the Second Amendment. This is meritless. The Second Amendment's "'right to keep and bear arms' does not apply against the States." *Bach v. Pataki*, 408 F.3d 75, 86 (2d Cir. 2005). The Second Amendment limits the federal government's ability to regulate firearms, but it in no way prevents states such as New York from imposing restrictions on firearms possession. *See, e.g., Lewis v. United States*, 445 U.S. 55, 65 n. 8 (1980); *United States v. Miller*, 307 U.S. 174, 178 (1939); *Bach*, 408 F.3d at 86.

10

Article 78); *Smith v. N.Y. City Dep't of Corr.*, 292 A.D.2d 198, 198 (1st Dep't 2002) (same); *Diaz v. Abate*, 215 A.D.2d 275, 275 (1st Dep't 1995) (appeal of an Article 78 proceeding challenging DOC's firearm review board's decision); *Duncan v. Kelly*, 2005 WL 2402695, at *1 (N.Y. Sup. Ct. Sept. 27, 2005). Nowhere in plaintiff's complaint does he allege that he filed an action under Article 78, nor does he allege how, given the available remedy of an Article 78 proceeding, plaintiff's due process rights were violated.

The claim alleging DOC violated § 1983 by refusing to permit plaintiff to be firearm qualified is dismissed.

V. CONCLUSION

For the foregoing reasons, defendant's motion is granted. Plaintiff's claims alleging discrimination based on unlawful termination and the refusal by DOC to allow plaintiff to be firearm qualified are dismissed with prejudice as time-barred. Plaintiff's claim alleging a violation of § 1983 is dismissed with prejudice for failing to state a claim upon which relief may be granted. Plaintiff's claim alleging discrimination based on DOC's failure to provide him back-pay is dismissed without prejudice. Plaintiff is given thirty-days from the date of this decision to amend his complaint as to his claim that DOC discriminated against him because of his race by denying him back-pay consistent with this Memorandum and Order. Plaintiff may contact the *pro se* office for assistance in filing an amended complaint.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 26, 2006
Brooklyn, NY

\* \* \*

Plaintiff appeared in these proceedings *pro se*. Defendant is represented by Jonathan Bardavid, Esq., and Diana Goell Voigt, Esq., Michael A. Cardozo, Corporation Counsel of the City of New York, 100 Church Street, Room 2-103, New York, New York 10007.